**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| DAMAKA, INC., | § | Case No. |
| | § | |
| Plaintiff, | § | **JURY TRIAL DEMANDED** |
| | § | |
| v. | § | |
| | § | |
| CISCO SYSTEMS, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Damaka, Inc. ("Damaka" or "Plaintiff") for its Complaint against Cisco Systems, Inc. ("Cisco" or "Defendant") alleges as follows:

**THE PARTIES**

1.      Damaka is incorporated under the laws of the State of Texas, with a place of business located at 700 South Central Expressway, Suite 400, Allen, Texas 75013.

2.      Upon information and belief, Defendant Cisco is a corporation organized and existing under the laws of the State of Delaware, with regular and established places of business in this District including at least at 2260 Chelsea Boulevard, Allen, Texas 75013. Upon information and belief, Defendant may be served through its registered agent, Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

**JURISDICTION AND VENUE**

3.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has subject matter jurisdiction over this action as provided by 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

4.     This Court has specific and personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. Upon information and belief, Defendant has sufficient minimum contacts with the forum because Defendant has physical locations and regularly transacts substantial business in the State of Texas and in this Judicial District. Further, Defendant has, directly or through subsidiaries or intermediaries, committed acts of patent infringement in the State of Texas and in this Judicial District, as further alleged in this Complaint, more particularly below.

5.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(b). Defendant is registered to do business in Texas and, upon information and belief, Defendant has transacted business in this Judicial District, has committed acts of direct and indirect infringement in this Judicial District, and has regular and established places of business in this Judicial District, including as set forth above. Defendant is subject to personal jurisdiction in this Judicial District and has committed acts of patent infringement in this Judicial District. Upon information and belief, Defendant through its own acts and/or through the acts of others, makes, uses, sells, offers to sell, and/or imports infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with the Judicial District, such that this venue is a fair and reasonable one.

6.     Defendant maintains physical places of business throughout the United States, including a 162,000 square foot data center in this Judicial District, located at 2260 Chelsea.

Boulevard, Allen, Texas 75013.[1] As such, venue is proper.

**PATENTS-IN-SUIT**

7.      On May 5, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,027,032 (the "'032 Patent") entitled "System And Method For Providing Additional Functionality To Existing Software In An Integrated Manner." A true and correct copy of the '032 Patent is attached hereto as Exhibit A.

8.      On February 21, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,578,092 (the "'092 Patent") entitled "System And Method For Providing Additional Functionality To Existing Software In An Integrated Manner." A true and correct copy of the '092 Patent is attached hereto as Exhibit B.

9.      On February 23, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,270,744 (the "'744 Patent") entitled "System And Method For Providing Additional Functionality To Existing Software In An Integrated Manner." A true and correct copy of the '744 Patent is attached hereto as Exhibit C.

10.      On February 7, 2023, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,576,046 (the "'046 Patent") entitled "System And Method For Providing Additional Functionality To Existing Software In An Integrated Manner." A true and correct copy of the '046 Patent is attached hereto as Exhibit D.

---

[1]

https://www.cisco.com/c/dam/en_us/about/ciscoitatwork/data_center/docs/Case_Study_How_Cisco_is_Progressing_Toward_IT_as_a_Service.pdf#:~:text=Built%20exclusively%20with%20technology%20from%20Cisco%20and,data%20halls:%20total%2038%2C000%2Dsquare%2Dfoot%2C%205.25%20mW%20nominal.&text=The%20Allen%2C%20Texas%20Data%20Center%20does%20not,as%20a%20result%20of%20using%20flywheel%20technology

11.     On March 12, 2024, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,930,362 (the "'362 Patent") entitled "System And Method For Providing Additional Functionality To Existing Software In An Integrated Manner." A true and correct copy of the '362 Patent is attached hereto as Exhibit E.

12.     On April 15, 2025, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 12,279,116 (the "'116 Patent") entitled "System And Method For Providing Additional Functionality To Existing Software In An Integrated Manner." A true and correct copy of the '116 Patent is attached hereto as Exhibit F. The '032 Patent, the '092 Patent, the '744 Patent, the '046 Patent, the '362 Patent, and the '116 Patent shall be collectively known as the "Patents-in-Suit."

13.     Damaka is the sole and exclusive owner of all right, title, and interest in and to the Patents-in-Suit, and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Damaka also has the right to recover all damages for infringement of the Patents-in-Suit, as permitted by law.

## INFRINGEMENT ALLEGATIONS

14.     The Patents-in-Suit generally cover methods for communication, and audio and video ("A/V") capabilities on computers ("computer" is inclusive of mobile devices) and computer applications. The technologies were developed by Sivakumar Chaturvedi, Satish Gundabathula, and Rashmi Hiremath. These techniques are incorporated into web and mobile applications developed by Cisco.

15.     Cisco has manufactured, used, marketed, distributed, sold, offered for sale, exported from, and imported into the United States, products that infringe the Patents-in-Suit. These Accused Products include, at a minimum all versions and variants of the Cisco Web and

Mobile A/V Applications, and Cisco's A/V SDKs, since 2019. For example, the Accused Products comprise at least the Cisco Mobile and Web Application "Webex," and the Webex SDKs.

16.    Damaka has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit.

17.    Upon information and belief, Cisco has had knowledge and notice of the Patents-in-Suit, and its infringement thereof since they issued. Cisco, as a major telecom and technology company, regularly monitors communication advances, and monitored or was otherwise aware, or should have been aware, of Plaintiff's patented inventions, including due to their impact on Cisco's own technology and telecom business. Alternatively, to the extent that Cisco avoided actual knowledge of the Patents-in-Suit, and of its infringement thereof, it was willfully blind. Upon information and belief, to the extent it lacked actual knowledge of infringement, Cisco deliberately avoided learning of infringement, despite subjectively believing that there was a high probability that it infringed Plaintiff's patents, and specifically the Patents-in-Suit. Upon information and belief, Cisco has adopted a policy or practice of not reviewing the patents of others, including those related to Cisco's specific industry and of Plaintiff in particular, thereby remaining willfully blind to the Patents-in-Suit. Upon information and belief, Cisco lacks written policies disseminated to employees regarding monitoring and avoidance of patent infringement by Cisco and lacks mechanisms for employees to report patents which they believe Cisco may infringe. Upon information and belief, Cisco and its employees understood that there was a high likelihood that patents filed on innovations by Plaintiff read on the Accused Products. Cisco and Damaka have also had business dealings in the past.

## COUNT I
### (Infringement of the '032 Patent)

18.     Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

19.     Damaka has not licensed or otherwise authorized Cisco to make, use, offer for sale, sell, or import any products that embody the inventions claimed in the '032 Patent.

20.     Cisco has and continues to directly infringe the '032 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '032 Patent. These products include, at a minimum, all versions and variants of Cisco's Webex Mobile SDKs.

21.     For Cisco directly infringes at least claim 15 of the '032 Patent by making, using, offering to sell, selling, and/or importing into the United States products that practice a method of receiving, by a function block stored in the memory of a mobile device, a request for an audio/video (A/V) call from a superblock application stored in the memory of the mobile device; determining, by the function block, that the superblock application is authorized to access A/V call functionality provided by the function block; determining, by the function block, that the A/V call requires access to a resource that is external to the mobile device; establishing, by the function block, the A/V call between the superblock application and the resource via a network interface, wherein such establishing is not supported by the superblock application; providing, by the function block, video output for the A/V call to a video window within a display window of the superblock application on the mobile device, wherein the video window is displayed simultaneously with the display window of the superblock application on a screen of the mobile device; and providing, by the function block, audio for the A/V call via the mobile device.

22.    The Accused Products practice a method of receiving, by a function block stored in the memory of a mobile device, a request for an audio/video (A/V) call from a superblock application stored in the memory of the mobile device. For example, upon information and belief, Cisco's Webex iOS SDK provides a function that may be called from a superblock application (i.e., the application utilizing the SDK) to enable A/V calling. For example, upon information and belief, Cisco's Webex iOS SDKs allows one to "[m]ace and receive audio/video calls." For example, upon information and belief, Cisco's Webex iOS is a function block stored in memory of a mobile device.

## Getting Started Guide

The Webex iOS SDK is the easiest way to integrate Webex into your iOS app.

### Overview

- Create Webex spaces
- Create Webex
- Add users/members/moderators into spaces/teams
- Post messages/share attachments
- Make and receive audio/video calls
- Make and receive cucm calls

[2]

23.    The Accused Products practice a method of determining, by the function block, that the A/V call requires access to a resource that is external to the mobile device. For example, upon information and belief, to utilize any of the Webex SDKs A/V call resources, a user must be validated remotely as an authorized user. Upon information and belief, one way the Webex SDK performs this validation is shown below.

---

[2] https://developer.webex.com/docs/sdks/ios



24.    The Accused Products practice a method of establishing, by the function block, the A/V call between the superblock application and the resource via a network interface, wherein such establishing is not supported by the superblock application. For example, upon information and belief, the Webex SDKs allow a user to establish an A/V Call between the superblock application and a resource, as shown below for an iOS application. Upon information and belief, this is accomplished over a network, such as 5G or the internet.

---

[3] https://developer.webex.com/docs/login-with-webex

8

## Getting Started Guide

The Webex iOS SDK is the easiest way to integrate Webex into your iOS app.

### Overview

- Create Webex spaces
- Create Webex
- Add users/members/moderators into spaces/teams
- Post messages/share attachments
- Make and receive audio/video calls
- Make and receive cucm calls

[4]

25.     The Accused Products practice a method of providing, by the function block, video output for the A/V call to a video window within a display window of the superblock application on the mobile device, wherein the video window is displayed simultaneously with the display window of the superblock application on a screen of the mobile device. For example, upon information and belief, the Webex SDKs create a view similar to the one shown below within the window of the superblock application.

---

[4] https://developer.webex.com/docs/sdks/ios



5

26.     The Accused Products practice a method of providing, by the function block, audio for the A/V call via the mobile device. For example, upon information and belief, the Webex SDK offers the function block shown below to establish an A/V call via a mobile device in the Webex iOS SDK.

---

5 https://www.webex.com/free-video-conferencing-no-dtm.html

**Step 4: Webex Audio/Video Calling**
This is the most significant SDK feature which enables users to make and receive audio/video calls using Webex. Calling in the SDK is very easy to use.

```
// Make a call
webex.phone.dial("coworker@example.com", option: MediaOption.audioVideo(local: ...,
    switch result {…
    case .success(let call):
        call.onConnected = {
```

[6]

27.     Cisco indirectly infringes one or more claims of the '032 Patent by knowingly and intentionally inducing others, including Cisco customers and end users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as Cisco's Webex Mobile SDKs.

28.     Cisco indirectly infringes one or more claims of the '032 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Cisco's customers and end users, in this District and throughout the United States . For example, Cisco's customers and end users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '032 Patent. Cisco induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, by providing instructions, documentation, and other information to customers and end users suggesting that they use the Accused Products in an infringing manner, including through technical support, marketing, product manuals, advertisements, and online documentation. As a result of Cisco's inducement, Cisco's customers and end users use Accused Products in a way intended by Cisco and directly infringe the '032 Patent. Cisco performs these affirmative acts

---

[6] https://developer-usgov.webex.com/docs/sdks/ios

with knowledge of the '032 Patent and with the intent, or willful blindness, the cause the induced acts that directly infringe the '032 Patent.

29.     Cisco indirectly infringes one or more claims of the '032 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end users, in this District and throughout the United States . Cisco's affirmative acts of selling and offering to sell the Accused Products in this District and throughout the United States and causing the Accused Products to be manufactured, used, sold or offered for sale contributes to others' use and manufacture of the Accused Products, such that the '032 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '032 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Cisco to be specially made or adapted for use in the infringement of the '032 Patent. Cisco performs these affirmative acts with knowledge of the '032 Patent and with the intent, or willful blindness, that they cause the direct infringement of the '032 Patent.

30.     Damaka has suffered damages as a result of Defendant's direct and indirect infringement of the '032 Patent in an amount to be proven at trial.

## COUNT II
### (Infringement of the '092 Patent)

31.     Paragraphs 1 through 17 are incorporated herein by reference as if fully set forth herein.

32.     Damaka has not licensed or otherwise authorized Cisco to make, use, offer for sale, sell, or import any products that embody the inventions claimed in the '092 Patent.

33.     Cisco has and continues to directly infringe the '092 Patent, either literally or under the doctrine of equivalents, without authorization and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each

and every limitation of one or more claims of the '092 Patent. These infringing products include, at a minimum, all versions and variants of Cisco's Webex Mobile SDKs.

34.    For example, Cisco directly infringes at least claim 1 of the '092 Patent by making, using, offering to sell, selling, and/or importing into the United States a computer program product in a non-transitory computer readable medium for use in a data processing system comprising a processor coupled to a network interface.  The computer program product contains computer program instructions comprising a function block, the function block having audio/video (A/V) call functionality.  The function block is operative, when executed by the processor, to: (a) receive from a superblock application a request for an audio/video (A/V) service; (ii) determine that the superblock application is authorized to access the A/V service functionality; (iii) determine that the A/V service requires access to a resource that is external to the data processing system; (iv) establish the A/V service between the superblock application and the resource via the network interface, wherein establishing is not otherwise supported by the superblock application; (v) provide video output for the A/V service to a video window within a display window associated with the superblock application, the video window being displayable simultaneously with the display window of the superblock application; and (vi) provide audio for the A/V service.

35.    The Accused Products are computer program products in a non-transitory computer readable medium for use in a data processing system that includes a processor coupled to a network interface, the computer program product contains computer program instructions that include a function block, the function block having audio/video (A/V) call functionality, the function block operative when executed by the processor to perform specific functions. For example, upon information and belief, Cisco's Webex Mobile SDKs is a computer program that ultimately resides on a mobile phone, such as an iPhone. Upon information and belief, iPhones contain a data

processing system that includes a processor coupled to a network interface. For example, upon information and belief, the Webex iOS SDK contains a function block for A/V call functionality, as shown below.

**Step 4: Webex Audio/Video Calling**
This is the most significant SDK feature which enables users to make and receive audio/video calls using Webex. Calling in the SDK is very easy to use.

```
// Make a call
webex.phone.dial("coworker@example.com", option: MediaOption.audioVideo(local: ...,
    switch result {…
    case .success(let call):
        call.onConnected = {
```

36.     The Accused Products receive from a superblock application a request for an audio/video (A/V) service. For example, upon information and belief, the superblock application may choose to call the Webex SDK A/V service at its leisure.

37.     The Accused Products determine that the superblock application is authorized to access the A/V service functionality. For example, upon information and belief, to utilize any of Webex SDK A/V call resources, the user must be validated remotely as an authorized user. Upon information and belief, one way the Webex SDK performs this validation is shown below.

---

[7] https://developer-usgov.webex.com/docs/sdks/ios



**Authorization Code Flow with Proof Key for Code Exchange**
Proof Key for Code Exchange (PKCE) is an extension to the Authorization Code flow that's designed to prevent Cross Site Request Forgery (CSRF) attacks. It uses an additional generated secret code in the request for the authorization code and ID or access token. For details see Getting an ID Token with Authorization Code Flow with Proof Key of Code Exchange.

The following diagram, explained below, outlines the process for using Authorization Code flow with PKCE to obtain an ID and/or access token.

38.    The Accused Products determine that the A/V service requires access to a resource that is external to the data processing system. For example, upon information and belief, Cisco's Webex SDK requires authorization via an external server, as shown above, in order to function.

39.    The Accused Products establish the A/V service between the superblock application and the resource via the network interface, wherein establishing is not otherwise supported by the superblock application. For example, upon information and belief, the Webex SDKs allow a user to establish an A/V call between the superblock application and a resource. Upon information and belief, this is done over a network, for example, such as a 5G network or the internet.

---

[8] https://developer.webex.com/docs/login-with-webex

40.     The Accused Products provide video output for the A/V service to a video window within a display window associated with the superblock application, where the video window is capable of being displayed simultaneously with the display window of the superblock application. For example, upon information and belief, the Webex SDKs create a window that is displayable simultaneously with the display window of the superblock application.

41.     The Accused Products provide audio for the A/V service. For example, upon information and belief, Cisco's Webex SDKs provide audio and video calls.

42.     Cisco indirectly infringes one or more claims of the '092 Patent by knowingly and intentionally inducing others, including Cisco customers and end users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as Cisco's Webex SDKs.

43.     Cisco indirectly infringes one or more claims of the '092 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Cisco's customers and end users, in this District and throughout the United States. For example, Cisco's customers and end users directly infringe, either literally or under the doctrine of equivalents, by using the inventions claimed in the '092 Patent. Cisco induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Due to Cisco's inducement, Cisco's customers and end users use the Accused Products in a way Cisco intends and directly infringe the '092 Patent. Cisco performs these affirmative acts with knowledge of the

'092 Patent and with the intent, or willful blindness, which cause the induced acts to directly infringe the '092 Patent.

44.    Cisco indirectly infringes one or more claims of the '092 Patent, pursuant by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end users, in this District and throughout the United States . Cisco's affirmative acts of selling and offering to sell the Accused Products in this District and throughout the United States and causing the Accused Products to be manufactured, used, sold and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '092 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '092 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Cisco to be specifically made or adapted for use in the infringement of the '092 Patent. Cisco performs these affirmative acts with knowledge of the '092 Patent and with the intent, or willful blindness, that they cause the direct infringement of the '092 Patent.

45.    Damaka has suffered damages as a result of Defendant's direct and indirect infringement of the '092 Patent in an amount to be proven at trial.

## COUNT III
### (Infringement of the '744 Patent)

46.    Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

47.    Damaka has not licensed or otherwise authorized Cisco to make, use, offer for sale, sell, or import any products that embody the inventions of the '744 Patent.

48.    Cisco has and continues to directly infringe the '744 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each

and every limitation of one or more claims of the '744 Patent. These products include all versions and variants of Cisco's Webex SDK.

49.     For example, Cisco directly infringes at least claim 20 of the '744 Patent by making, using, offering to sell, selling, and/or importing into the United States products that practice a method comprising: receiving, by a function block stored in the memory of a mobile device, a request for a communication service from a superblock application also stored in the memory of the mobile device, wherein the superblock application is configured to access the function block for functionality that is lacking in the superblock application; and determining, by the function block, that providing the communication service to the superblock application requires access to an external device; establishing, by the function block, a connection with the external device to support the communication service via a network interface of the mobile device, wherein the establishing is not supported by the superblock application; and providing, by the function block, the communication service to the superblock application, wherein the steps of receiving, determining, establishing, and providing are performed without switching context from the superblock application to another application on the mobile device.

50.     The Accused Products practice a method of receiving, by a function block stored in the memory of a mobile device, a request for a communication service from a superblock application also stored in the memory of the mobile device, wherein the superblock application is configured to access the function block for functionality that is lacking in the superblock application. For example, upon information and belief, Cisco's Webex SDK for iOS is stored in the memory of a mobile device (e.g., an iPhone). For example, upon information and belief, it may be called by a superblock application that does not have A/V calling support.

51.    The Accused Products practice a method of determining, by the function block, which providing the communication service to the superblock application requires access to an external device. For example, upon information and belief, Cisco's Webex SDKs require remote authorization to function, as shown above in the complaint.

52.    The Accused Products practice a method of establishing, by the function block, a connection with the external device to support the communication service via a network interface of the mobile device, wherein the establishing is not supported by the superblock application. For example, upon information and belief, the Webex SDKs allow a user to establish an A/V Call between the superblock application and a resource only after connecting to a remote server for authorization. Upon information and belief, this is done over a network, such as 5G or the internet. Upon information and belief, the Webex SDKs utilize remote Cisco servers (*e.g.* "the Webex cloud") to perform part of the A/V functionality, as evidenced by the below.

> (i)  Any participant can choose the caption language, but only the meeting host can set the spoken language. After setting a spoken language, the Webex cloud expects and assumes that all participants will communicate in that language.

[9]

53.    The Accused Products practice a method of providing, by the function block, the communication service to the superblock application, wherein the steps of receiving, determining, establishing, and providing are performed without switching context from the superblock application to another application on the mobile device. For example, upon information and belief, Cisco's Webex SDKs are embedded within the superblock application, and thus do not require switching applications, as evidenced below.

---

[9] https://developer.webex.com/docs/sdks/webex-meetings-sdk-web-advanced-meeting-controls

### Getting Started Guide

The Webex iOS SDK is the easiest way to integrate Webex into your iOS app.    [10]

54.     Cisco indirectly infringes one or more claims of the '744 Patent by knowingly and intentionally inducing others, including Cisco customers and end users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as Cisco's Webex SDKs.

55.     Cisco indirectly infringes one or more claims of the '744 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Cisco's customers and end users, in this District and throughout the United States . For example, Cisco's customers and end users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '744 Patent. Cisco induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and by providing instructions, documentation, and other information to customers and end users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. As a result of Cisco's inducement, its customers and end users use Accused Products in a manner Cisco intends and directly infringe the '744 Patent. Cisco performs these affirmative acts with knowledge of the '744 Patent and with the intent, or with willful blindness, that the induced acts directly infringe the '744 Patent.

56.     Cisco indirectly infringes one or more claims of the '744 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end

---

[10] https://developer.webex.com/docs/sdks/ios#complete-demo-app

users, in this District and throughout the United States . Cisco's affirmative acts of selling and offering to sell the Accused Products in this District and throughout the United States and of causing the Accused Products to be manufactured, used, sold and offered for sale, contributes to others' use and manufacture of the Accused Products, such that the '744 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '744 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Cisco to be specially made or adapted for use in the infringement of the '744 Patent. Cisco performs these affirmative acts with knowledge of the '744 Patent and with the intent, or willful blindness, that they cause the direct infringement of the '744 Patent.

57.     Damaka has suffered damages as a result of Defendant's direct and indirect infringement of the '744 Patent in an amount to be proven at trial.

## COUNT IV
### (Infringement of the '046 Patent)

58.     Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

59.     Damaka has not licensed or otherwise authorized Cisco to make, use, offer for sale, sell, or import any products that embody the inventions of the '046 Patent.

60.     Cisco has, and continues to, directly infringe the '046 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '046 Patent. These products include, at a minimum, all versions and variants of Cisco's Webex SDK.

61.     For example, Cisco directly infringes at least claim 11 of the '046 Patent by making, using, offering to sell, selling, and/or importing into the United States products that practice a method implemented in a function block associated with an electronic device having a network

interface, comprising: accessing a resource via the network interface to provide a service to a superblock application on the electronic device, where the service is not otherwise supported by the superblock application, and where the function block is accessible only to the superblock application on the electronic device; and providing the service to the superblock application without switching context from the superblock application to another application on the electronic device.

62.    The Accused Products practice a method implemented in a function block associated with an electronic device having a network interface. For example, upon information and belief, Cisco's Webex iOS SDK is a function block that may be associated with an iPhone (an electronic device with a network interface).

63.    The Accused Products practice a method of accessing a resource via the network interface to provide a service to a superblock application on the electronic device, wherein the service is not otherwise supported by the superblock application, and wherein the function block is accessible only to the superblock application on the electronic device. For example, upon information and belief, Cisco's Webex SDKs access the Webex Cloud servers to enable A/V calls within a superblock application.

64.    The Accused Products practice a method of providing the service to the superblock application without switching context from the superblock application to another application on the electronic device. For example, upon information and belief, Cisco's Webex SDKs are completely embedded in superblock applications and do not require switching to a different application.

65.    Cisco indirectly infringes one or more claims of the '046 Patent by knowingly and intentionally inducing others, including Cisco customers and end users of the Accused Products

and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as Cisco's Webex SDKs.

66.    Cisco indirectly infringes one or more claims of the '046 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Cisco's customers and end users, in this District and throughout the United States . For example, Cisco's customers and end users directly infringe either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '046 Patent. Cisco induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and by providing instructions, documentation, and other information to customers and end users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing materials, product manuals, advertisements, and online documentation. As a result of Cisco's inducement, Cisco's customers and end users use Accused Products in a way Cisco intends and directly infringe the '046 Patent. Cisco performs these affirmative acts with knowledge of the '046 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '046 Patent.

67.    Cisco indirectly infringes one or more claims of the '046 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end users, in this District and throughout the United States . Cisco's affirmative acts of selling and offering to sell the Accused Products in this District and throughout the United States and causing the Accused Products to be manufactured, used, sold and offered for sale, contributes to others' use and manufacture of the Accused Products, such that the '046 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the

'046 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Cisco to be specially made or adapted for use in the infringement of the '046 Patent. Cisco performs these affirmative acts with knowledge of the '046 Patent and with the intent, or willful blindness, that they cause the direct infringement of the '046 Patent.

68.     Damaka has suffered damages as a result of Defendant's direct and indirect infringement of the '046 Patent in an amount to be proven at trial.

## COUNT V
### (Infringement of the '362 Patent)

69.     Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

70.     Damaka has not licensed or otherwise authorized Cisco to make, use, offer for sale, sell, or import any products that embody the inventions claimed in the '362 Patent.

71.     Cisco has and continues to directly infringe the '362 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '362 Patent. These products include, at a minimum, all versions and variants of Cisco's Webex SDK.

72.     For example, Cisco directly infringes at least claim 1 of the '362 Patent by making, using, offering to sell, selling, and/or importing into the United States products that practice a method for enabling an end-to-end connection between a first user and a second user to participate in a real-time communication session over the internet, the method comprises: creating for storage on a server, a superblock application configured for use by a computing device of the first user and a superblock application configured for use by a computing device of the second user, wherein each of the superblock applications has a function block compiled therein, wherein each respective superblock application communicates with its respective function block using application

programming interface (API) calls; receiving, by the superblock application on the computing device of the first user, a request to initiate a real-time communication session with the second user; communicating, by the superblock application on the computing device of the first user, the request to a remote resource; providing, by the superblock application on the computing device of the second user, a notification that the real-time communication session with the first user is being requested; identifying, by the superblock application on the computing device of the second user, rendering information; and rendering, by the superblock application on the computing device of the second user, the real-time communication session with the first user using the rendering information.

73.    The Accused Products practice a method for enabling an end-to-end connection for a first user and a second user to participate in a real-time communication session over the internet. For example, Cisco's Webex product allows two users to communicate, in both audio and video, in real time.



[11]

---

74.     The Accused Products practice a method of creating for storage on a server, a superblock application configured for use by a computing device of the first user and a superblock application configured for use by a computing device of the second user, wherein each of the superblock applications has a function block compiled therein, wherein each respective superblock application communicates with its respective function block using application programming interface (API) calls. For example, one Webex user may call another Webex user, wherein both users must have Webex installed on their respective devices. For example, on information and belief, Cisco's Webex must call a function block that enables the superblock application (Webex) to communicate with the other Webex user.

75.     The Accused Products practice a method of receiving, by the superblock application on the computing device of the first user, a request to initiate a real-time communication session with the second user. For example, when a Webex user wants to initiate a call with a different Webex user, the callee receives the initiation request.



12

76.     The Accused Products practice a method of communicating, by the superblock application on the computing device of the first user, the request to a remote resource. For example, upon information and belief, Cisco's Webex must communicate with both Cisco's back-end servers, as well as a different user's device.

## Webex Calling



13

77.     The Accused Products practice a method of providing, by the superblock application on the computing device of the second user, a notification that the real-time

---

12 https://help.webex.com/en-us/article/e43k9e/Webex-App-%7C-Change-your-caller-ID
13 https://www.cisco.com/c/en/us/products/unified-communications/webex-calling/index.html

communication session with the first user is being requested. For example, Cisco's Webex provides a notification that the real-time communication session is being requested.



78.     The Accused Products practice a method of identifying, by the superblock application on the computing device of the second user, rendering information. For example, Cisco's Webex renders both caller information, callee information and A/V information.

---

[14] https://help.webex.com/en-us/article/e43k9e/Webex-App-%7C-Change-your-caller-ID



79.    The Accused Products practice a method of rendering, by the superblock application on the computing device of the second user, the real-time communication session with the first user using the rendering information. For example, Cisco's Webex is capable of facilitating a real-time communication session.

80.    Cisco indirectly infringes one or more claims of the '362 Patent by knowingly and intentionally inducing others, including Cisco customers and end users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as Cisco's Webex SDKs.

---

[15] https://www.webex.com/

81.    Cisco indirectly infringes one or more claims of the '362 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Cisco's customers and end users, in this District and throughout the United States . For example, Cisco's customers and end users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '362 Patent. Cisco induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end users that suggest that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. As a result of Cisco's inducement, Cisco's customers and end users use Accused Products in a way Cisco intends and directly infringe the '362 Patent. Cisco performs these affirmative acts with knowledge of the '362 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '362 Patent.

82.    Cisco indirectly infringes one or more claims of the '362 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end users, in this District and throughout the United States . Cisco's affirmative acts of selling and offering to sell the Accused Products in this District and throughout the United States and causing the Accused Products to be manufactured, used, sold and offered for sale contribute to others' use and manufacture of the Accused Products, such that the '362 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '362 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Cisco to be specially made or adapted for use in the infringement of the

'362 Patent. Cisco performs these affirmative acts with knowledge of the '362 Patent and with the intent, or willful blindness, that they cause the direct infringement of the '362 Patent.

83.     Damaka has suffered damages as a result of Defendant's direct and indirect infringement of the '362 Patent in an amount to be proven at trial.

## COUNT VI
### (Infringement of the '116 Patent)

84.     Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

85.     Damaka has not licensed or otherwise authorized Cisco to make, use, offer for sale, sell, or import any products that embody the inventions of the '116 Patent.

86.     Cisco has and continues to directly infringe the '116 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '116 Patent. These products include, at a minimum, all versions and variants of Cisco's Webex SDK.

87.     For example, Cisco directly infringes at least claim 1 of the '116 Patent by making, using, offering to sell, selling, and/or importing into the United States products that practice a method for providing a real-time communication session over the internet for a superblock application intended for use on a computing device, the method comprises: providing a function block for use in adding additional functionality to a third-party superblock application that has its own functionality and display window, wherein the function block is configured to be compiled into the superblock application and is configured to add the additional functionality to provide the real-time communication session using one or more servers connected over the internet, and wherein the function block is further configured to interact with the superblock application through one or more application programming interface (API) calls; and enabling establishment of the real-

time communication session between the one or more servers and the function block compiled into the superblock application so that the function block can provide the real-time communication session to the superblock application.

88.     The Accused Products practice a method for providing a real-time communication session over the internet for a superblock application intended for use on a computing device. For example, Cisco's Webex SDK enables real-time communication sessions over the internet for its users.



89.     The Accused Products practice a method of providing a function block for use in adding additional functionality to a third-party superblock application that has its own functionality and display window, wherein the function block is configured to be compiled into the superblock application and is configured to add the additional functionality to provide the real-time communication session using one or more servers connected over the internet, and wherein the function block is configured to interact with the superblock application through one or more application programming interface (API) calls. For example, on information and belief Cisco's Webex SDK, enables the users of the SDK customize their own functionality to allow for the superblock application to use its own display widow. For example, Cisco's Webex SDK utilizes

---

[16] https://developer.webex.com/docs/sdks/ios

the cloud to provide its real-time A/V session, as shown below. For example, Cisco's Webes SDK utilizes API calls, as shown above, to accomplish this.

> ⓘ Any participant can choose the caption language, but only the meeting host can set the spoken language. After setting a spoken language, the Webex cloud expects and assumes that all participants will communicate in that language.

[17]

90.    The Accused Products practice a method of enabling the establishment of the real-time communication session between one or more servers and the function block compiled into the superblock application so that the function block can provide the real-time communication session to the superblock application. For example, on information and belief, Cisco's Webex SDK is directly compiled into the superblock application, as one must compile the function blocks of the Cisco Webex SDK to package them with the superblock application so that the functionality may be present in, for example, a consumer facing application.

91.    Cisco indirectly infringes one or more claims of the '116 Patent by knowingly and intentionally inducing others, including Cisco customers and end users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as Cisco's Webex SDKs.

92.    Cisco indirectly infringes one or more claims of the '116 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Cisco's customers and end users, in this District and throughout the United States. For example, Cisco's customers and end users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '116 Patent. Cisco induces this direct infringement through its

---

[17] https://developer.webex.com/docs/sdks/webex-meetings-sdk-web-advanced-meeting-controls

affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and by providing instructions, documentation, and other information to customers and end users suggesting that they use the Accused Products in an infringing manner, including through technical support, marketing, product manuals, advertisements, and online documentation. As a result of Cisco's inducement, Cisco's customers and end users use Accused Products in a way Cisco intends and directly infringe the '116 Patent. Cisco performs these affirmative acts with knowledge of the '116 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '116 Patent.

93.     Cisco indirectly infringes one or more claims of the '116 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end users, in this District and throughout the United States . Cisco's affirmative acts of selling and offering to sell the Accused Products in this District and throughout the United States and causing the Accused Products to be manufactured, used, sold and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '116 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '116 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Cisco to be specially made or adapted for use in the infringement of the '116 Patent. Cisco performs these affirmative acts with knowledge of the '116 Patent and with the intent, or willful blindness, that they cause the direct infringement of the '116 Patent.

94.     Damaka has suffered damages as a result of Defendant's direct and indirect infringement of the '116 Patent in an amount to be proven at trial.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Damaka prays for relief against Cisco as follows:

a.        Entry of judgment declaring that Cisco has directly and/or indirectly infringed one or more claims of the Patents-in-Suit;

b.        Entry of judgment declaring that Cisco's infringement of the Patents-in-Suit is willful;

c.        An order awarding damages sufficient to compensate Damaka for Defendant's infringement of the Patents-in-Suit, but in no event is less than a reasonable royalty, together with pre-judgment and post-judgment interest and costs;

d.        Entry of judgment declaring that this case is exceptional and awarding Damaka its costs and reasonable attorneys' fees under 35 U.S.C. § 285;

e.        An accounting for acts of infringement;

f.        Such other equitable relief which may be requested and to which the Plaintiff is entitled; and

g.        Such other and further relief as the Court deems just and proper.


Dated: May 30, 2025                    Respectfully submitted,

                                        /s/Alfred R. Fabricant
                                        Alfred R. Fabricant
                                        NY Bar No. 2219392
                                        Email: ffabricant@fabricantllp.com
                                        Peter Lambrianakos
                                        NY Bar No. 2894392
                                        Email: plambrianakos@fabricantllp.com

Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
Jacob Ostling
NY Bar No. 5684824
Email: jostling@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile:  (212) 257-5796

***ATTORNEYS FOR PLAINTIFF
DAMAKA, INC.***